UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SABBY VOLATILITY WARRANT MASTER FUND LTD.,

Plaintiff,

*-v.-*

SAFETY SHOT, INC.,

Defendant.

No.: 1:24-cv-920-NRB

**FIRST AMENDED COMPLAINT**

Plaintiff Sabby Volatility Warrant Master Fund Ltd. ("Sabby"), by its attorneys, Olshan Frome Wolosky LLP, submits this First Amended Complaint against defendant Safety Shot, Inc. ("Safety Shot," or the "Company"), and respectfully alleges, upon knowledge as to its own acts and information as to the acts of others, as follows:

**INTRODUCTION**

1. This case arises from multiple breaches of multiple contracts by defendant Safety Shot, Inc. ("Safety Shot").

2. Plaintiff Sabby invested in Safety Shot in January 2023, purchasing shares of common stock along with two sets of Warrants, each for 2,105,623 shares. The number of Warrants increased pursuant to their terms when Safety Shot issued a dividend in August 2023 in the form of shares of a subsidiary. But Safety Shot never registered the additional warrant shares, breaching the Registration Rights Agreement that it had signed in January 2023.

3. In November 2023, Safety Shot offered Sabby an additional 200,000 shares of restricted common stock if it would exercise in full its remaining Warrants on a cash basis. Sabby agreed. The parties' arrangement was memorialized in a Warrant Exercise Agreement dated

November 8, 2023, which referred to the additional shares as the "Inducement Shares." Sabby delivered the full exercise price, but Safety Shot never delivered the Inducement Shares.

4. In November 2023, Sabby also learned that the additional warrant shares arising from the dividend, 306,728 warrant shares, were not registered and as a result could not be exercised for cash. Safety Shot assured Sabby that it would soon register the additional warrant shares. When Safety Shot failed to do so, Sabby exercised its remaining Warrants on a cashless basis, entitling it to more than 210,000 shares of common stock. Once again, Safety Shot went into breach mode. Without explanation or justification, Safety Shot failed to deliver any shares. Safety Shot mistakenly claimed that there was a registration statement in effect for the additional warrant shares but had no response when Sabby pointed out its mistake.

5. As a result of the foregoing contractual breaches, Sabby is entitled to compensatory damages, liquidated damages, and/or equitable relief (as an alternative) as well as interest and attorney's fees.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a)(2). There is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff is a citizen of the Cayman Islands and Defendant is a citizen of Delaware, where it is incorporated, and a citizen of Florida, its principal place of business.

7. Defendant has consented to jurisdiction in New York. Pursuant to Section 5(e) of the Warrant, the parties have "irrevocably" submitted to the "exclusive jurisdiction of the state and federal courts sitting in the City of New York, Borough of Manhattan." The Registration Rights Agreement and Warrant Exercise Agreement have similar jurisdictional provisions.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(c)(2).

## PARTIES

9. Plaintiff Sabby Volatility Warrant Master Fund Ltd. ("Sabby") is a company formed under the laws of the Cayman Islands with its principal place of business in George Town, Cayman Islands. Sabby is an investment fund managed by Sabby Management, LLC.

10. Defendant Safety Shot is a Delaware corporation with its principal office in Jupiter, Florida. Safety Shot is a wellness and functional beverage company, engaged in the research and development of over-the-counter products and intellectual property for the treatment of a variety of health problems, including overcoming the aftereffects of alcohol consumption. Defendant's shares of common stock trade under the symbol "SHOT." Before September 15, 2023, the Company was named "Jupiter Wellness, Inc." and that corporate name appears on some of the agreements with Sabby.

## FACTUAL BACKGROUND

11. On or about January 23, 2023, Sabby entered into four agreements (the "Transaction Documents") with Safety Shot:

(i) the RD Securities Purchase Agreement (the "RD SPA");

(ii) the PIPE Securities Purchase Agreement (the "PIPE SPA");

(iii) Warrants issued pursuant to the PIPE SPA (the "Warrants"); and

(iv) the Registration Rights Agreement (the "RRA").

12. Pursuant to the RD SPA, Sabby purchased common stock in a registered direct offering. Pursuant to the PIPE Securities Purchase Agreement, Sabby acquired three-year Warrants and five-year Warrants to purchase Safety Shot common stock at an original exercise price of $1.00 per share (collectively, the "Warrants"). Each of the Warrants entitled Sabby to purchase 2,105,263 shares (4,210,526 shares total) at the exercise price. Sabby paid $0.125 per share for each Warrant. Under the RRA, Safety Shot agreed to register the shares underlying the Warrants

with the SEC for resale in the public markets, according to specified timelines. Safety Shot further agreed to maintain an effective registration statement until the Warrants were exercised in full.

A. Safety Shot's Breaches of the Warrant Exercise Agreement

13. In August 2023, the Warrants adjusted to reduce the exercise price to $0.93 and to increase each Warrant by 153,364 shares, adding a total of 306,728 shares. Safety Shot, however, did not amend its existing registration statement to cover the additional shares.

14. Once the Warrants could be exercised for cash and sold in the public markets, Sabby began to exercise them opportunistically, based on market liquidity and price. In early November 2023, Safety Shot proposed that Sabby make a single cash exercise for all of its remaining Warrants, which then covered 2,640,727 shares. The exercise would provide Safey Shot with much-needed cash. It would also eliminate the risk that the share price might decline, resulting in Sabby not exercising at all. Sabby requested additional consideration for the liquidity risks that it would bear with a large position in Safety Shot common stock. Safety Shot agreed.

15. On November 8, 2023, Sabby and Safety Shot entered into a fifth agreement, the Warrant Exercise Agreement, wherein Sabby agreed to a single cash exercise for its remaining Warrants. In exchange, Safety Shot agreed to issue 200,000 shares of common stock (the "Inducement Shares") as follows:

> Upon the Company's receipt of the proceeds of the Warrant exercise, the Company will issue Sabby 200,000 shares of the Company's Common Stock (the "Inducement Shares") as an inducement to exercise the Warrants. The Inducement Shares shall be issued with a standard legend under the Securities Act of 1933, as amended.

16. Safety Shot further agreed that it would include the Inducement Shares in the next registration statement that it filed and, in any event, would file a registration statement registering the Inducement Shares within 15 days. Further, Section 6 of the Warrant Exercise Agreement

provided that from November 8, 2023, through 14 days after Sabby exercised the Warrants, Safety Shot would not file any registration statement *other* than a registration statement registering the Inducement Shares.

17. On or about November 10, 2023, Sabby wired Safety Shot $2,461,157.56 to exercise the Warrants, fully performing its obligations under the Warrant Exercise Agreement

18. After Sabby wired the full exercise amount, Safety Shot realized that it did not have sufficient registered common stock to satisfy the exercise in full. In breach of the RRA, Safety Shot did not have an effective registration statement for the additional 306,728 shares (the "Unregistered Warrant Shares") resulting from the stock dividend in August 2023. Safety Shot returned Sabby's funds for the exercise of the Unregistered Warrant Shares.

19. By the time Safety Shot returned the exercise price, Sabby had already sold the Unregistered Warrant Shares. Sabby was then forced to pay borrow costs and related fees, and later to cover its position, causing Sabby financial loss.

20. In breach of the Warrant Exercise Agreement, Safety Shot also failed to deliver the Inducement Shares. Safety Shot has never issued the Inducement Shares to Sabby, nor has Safety Shot registered them.

B. Safety Shot's Breaches of the Warrants

21. By late January 2024, it had become clear that Safety Shot was unwilling or unable to timely register the Unregistered Warrant Shares, notwithstanding many assurances that registration was imminent.

22. To obtain value for its investment, Sabby chose to utilize the "Cashless Exercise" option in Section 2(c) of the Warrants which provides:

> Cashless Exercise. If at the time of exercise hereof there is no effective registration statement registering, or the prospectus contained therein is not available for the issuance of the Warrant

> Shares to the Holder or the resale of the Warrant Shares by the Holder, then this Warrant may also be exercised, in whole or in part, at such time by means of a "cashless exercise" in which the Holder shall be entitled to receive a number of Warrant Shares equal to the quotient obtained by dividing [(A-B) (X)] by (A)…

23. On February 2, 2024, Sabby submitted a cashless exercise for 306,728 Warrants. Based on the market price at the time of exercise, Sabby was entitled to receive 212,692 shares of common stock, which were due within two trading days. Safety Shot failed to deliver any shares.

24. In Section 2(a), the Warrant provides, "The Company shall deliver any objection to any Notice of Exercise within one (1) Trading Day of receipt of such notice." Safety Shot did not object or otherwise respond to the February 2 exercise.

25. On February 16, 2024, at 12:50 pm, Sabby again made a cashless exercise of the 306,728 Warrants. In response, at 12:53 pm, the Company's CEO responded "these warrants are registered now." If true, this would require a cash exercise by Sabby. The CEO's statement, however, was false.

26. Sabby responded that the registration statement declared effective a few days earlier was limited to warrants issued in July 2021 and did not cover the Unregistered Warrant Shares.

27. Two minutes later at 12:55 pm, Safety Shot's CEO doubled down, responding: "[A]s with before the board is determined, they are not doing cashless exercise looks like this matter will be settled in court."

28. Safety Shot did not deliver any shares of common stock in response to the February 16 exercise. Nor did Safety Shot voice any objection apart from its erroneous claim that a registration statement was in effect for the Unregistered Warrant Shares.

C. Safety Shot's Breaches of the RRA

29. An essential component of Sabby's investment in January 2023 was Safety Shot's commitment in the RRA to obtain – and maintain – an effective registration statement for the Warrant Shares. Section 2(a) of the RRA provides:

> (a) On or prior to each Filing Date, the Company shall prepare and file with the Commission a Registration Statement covering the resale of *all of the Registrable Securities* that are not then registered on an effective Registration Statement for an offering to be made on a continuous basis pursuant to Rule 415 . . . .
>
> * * *
>
> . . . and shall use its best efforts to keep such Registration Statement *continuously effective under the Securities Act* until the date that all Registrable Securities covered by such Registration Statement (i) have been sold, thereunder or pursuant to Rule 144, . . . .

30. The term "Registrable Securities" includes:

> . . . (b) all Warrant Shares then issued and issuable upon exercise of the Warrants. . ., and (c) any securities issued. . . upon any stock split, dividend or other distribution, recapitalization or similar event with respect to the foregoing;. . . .

31. The Unregistered Warrant Shares are "Registrable Securities" under the RRA. Section 3(c) of the RRA confirms this fact. It provides that, in the event the number of securities that could be converted into common stock ever exceeds the total shares of common stock then registered, the Company must file a registration statement registering the new securities as soon as practicable:

> (c) If during the Effectiveness Period, the number of Registrable Securities at any time exceeds 100% of the number of shares of Common Stock then registered in a Registration Statement, then the Company shall file as soon as reasonably practicable, but in any case prior to the applicable Filing Date, an additional Registration Statement covering the resale by the Holders of not less than the number of such Registrable Securities.

32. Section 2(d) of the RRA establishes a liquidated damages remedy in the event securities are not timely registered or the registration statement ceases to be effective. It provides:

> If. . . (v) after the effective date of a Registration Statement, such Registration Statement ceases for any reason to remain continuously effective as to all Registrable Securities included in such Registration Statement, or the Holders are otherwise not permitted to utilize the Prospectus therein to resell such registrable Securities, for more than ten (10) consecutive calendar days or more than an aggregate of fifteen (15) calendar days (which need not be consecutive calendar days) during any 12-month period . . . then . . . on [the date the ten or fifteen calendar day period is exceeded] and on each monthly anniversary . . . until the applicable Event is cured, the Company shall pay to each holder an amount in cash as partial liquidated damages and not as a penalty, equal to the product 2.0% multiplied by the aggregate Subscription Amount paid by such Holder pursuant to the Purchase Agreement. If the Company fails to pay any partial liquidated damages pursuant to this Section in full within seven days after the date payable, the Company will pay interest thereon at a rate of 15% per annum . . . to the Holder, accruing daily.

33. On August 14, 2023, the Company issued a dividend in the form of shares of its subsidiary, SRM. In connection with the spin-off, Safety Shot distributed 2,000,000 shares of SRM to record holders of the Company's common stock and certain other warrants (the "SRM Distribution").

34. The SRM Distribution triggered the anti-dilution provisions of the Warrants, lowering the exercise price to $0.932 and increasing the amount of Warrant Shares exercisable by Sabby by 306,728 shares.

35. Safety Shot has breached the RRA by failing to register the Unregistered Warrant Shares, which remain unregistered to this day.

36. As a result, Sabby is entitled to liquidated damages and interest pursuant to the RRA.

37. As a result of Safety Shot's numerous breaches of its contracts, Sabby has been damaged, as follows:

a. Pursuant to the Warrant Exercise Agreement, Sabby is entitled to damages and attorneys' fees based on the non-delivery of the Inducement Shares, the failure to register these shares, and the failure to deliver free trading shares for the full amount of the cash exercise in November 2023.

b. Pursuant to the Warrants, Sabby is entitled to damages in excess of $600,000 or, in the alternative, specific performance. Sabby is also entitled to liquidated damages computed in accordance with Section 2(d) of the Warrants and attorneys' fees.

c. Pursuant to the RRA, Sabby is entitled to liquidated damages, interest, and attorneys' fees, as well as actual damages.

**FIRST CAUSE OF ACTION**
**(Breach of the RRA)**

38. Plaintiff restates the allegations in paragraphs 1 – 37 above.

39. Plaintiff has fully performed its obligations under the Transaction Documents. As set forth above, Safety Shot breached the RRA by failing to maintain an effective registration for all of the Warrant Shares after August 15, 2023.

40. As a result, Sabby is entitled to liquidated damages according to the RRA. In addition, Sabby is entitled to damages arising from its failed cash exercise in November 2023.

41. Further, Sabby is entitled to interest on the unpaid amount of liquidated damages, as provided for in the RRA.

42. As a direct, proximate, and foreseeable result of defendant's breach, Sabby has suffered losses in an amount to be proved at trial.

43. Under the PIPE Securities Purchase Agreement and the RD Securities Purchase Agreement, Sabby is entitled to recover its attorneys' fees, expenses, and costs.

**SECOND CAUSE OF ACTION**
**(Breach of the Warrant Exercise Agreement)**

44. Plaintiff restates the allegations in paragraphs 1 – 37 above.

45. Plaintiff has fully performed its obligations under the Warrant Exercise Agreement.

46. As set forth above, Safety Shot has breached the Warrant Exercise Agreement by failing to deliver the full amount of shares due thereunder. Safety Shot's inability to deliver the Unregistered Warrant Shares has caused Sabby financial loss.

47. Safety Shot has also breached the Warrant Exercise Agreement by failing to deliver the Inducement Shares.

48. Safety Shot has also breached the Warrant Exercise Agreement by failing to file a registration statement for the Inducement Shares by November 23, 2023, or at any time since. Had Safety Shot complied with its registration obligations, Sabby would have had free trading shares by mid-February 2024.

49. As a direct, proximate, and foreseeable result of defendant's breaches, Sabby has suffered losses in an amount to be proved at trial, but estimated to exceed $750,000.

50. Under the Warrant Exercise Agreement and Section 5(e) of the Warrants, Sabby is also entitled to recover its attorneys' fees.

**THIRD CAUSE OF ACTION**
**(Breach of the Warrants)**

51. Plaintiff restates the allegations in paragraphs 1 – 37 above.

52. Plaintiff has fully performed its obligations under the Transaction Documents. As set forth above, Safety Shot breached the Warrants by failing to deliver the shares that were due on cashless exercise in February 2024.

53. As a direct, proximate, and foreseeable result of defendant's breach, Sabby has suffered losses in an amount to be proved at trial, but currently estimated to be at least $600,000.

54. Under Section 5(e) of the Warrant, Sabby is also entitled to recover its attorneys' fees, expenses, and costs.

**FOURTH CAUSE OF ACTION**
**(Specific Performance of the Warrants)**

55. Plaintiff restates the allegations in paragraphs 1 – 37 above.

56. The Warrant Exercise Agreement is an enforceable contract. Plaintiff has fully performed its obligations under the Warrant.

57. In Section 5(j), the Warrant provides:

> The Holder, in addition to being entitled to exercise all rights granted by law, including recovery of damages, will be entitled to specific performance of its rights under this Warrant. The Company agrees that monetary damages would not be adequate compensation for any loss incurred by reason of a breach by it of the provisions of this Warrant and hereby agrees to waive and not to assert the defense in any action for specific performance that a remedy at law would be adequate.

58. As a result of Safety Shot's breach of the Warrants, Plaintiff is entitled to a decree of specific performance requiring Safety Shot to comply with the terms of its contract and to deliver to Plaintiff free trading shares of Safety Shot common stock in accordance with the Cashless Exercise provision of the Warrants, along with liquidated damages under Section 2(d) of the Warrant.

59. Plaintiff has no adequate remedy of law.

60. Under Section 5(e) of the Warrant, Sabby is also entitled to recover its attorneys' fees, expenses, and costs.

**FIFTH CAUSE OF ACTION**
**(Specific Performance of the Warrant Exercise Agreement)**

61. Plaintiff restates the allegations in paragraphs 1 – 37 above.

62. The Warrant Exercise Agreement is an enforceable contract. Plaintiff has fully performed its obligations under the Warrant.

63. As a result of Safety Shot's breach of the Warrant Exercise Agreement, Plaintiff is entitled to a decree of specific performance requiring Safety Shot to deliver to Plaintiff 200,000 free trading shares of Safety Shot common stock.

64. Plaintiff has no adequate remedy of law.

65. Sabby is also entitled to recover its attorneys' fees, expenses, and costs.

66. Under Section 5(e) of the Warrant, Sabby is also entitled to recover its attorneys' fees.

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

a. On the first claim for relief, awarding Plaintiff liquidated and compensatory damages in an amount to be determined at trial, plus interest and attorneys' fees, expenses, and costs;

b. On the second claim for relief, awarding Plaintiff damages in an amount to be determined at trial estimated to be at least $750,000, plus interest and attorneys' fees, expenses, and costs;

c. On the third claim for relief, awarding Plaintiff damages in an amount estimated to be at least $600,000 liquidated damages, plus interest and attorneys' fees, expenses, and costs;

d. On the fourth claim for relief, a decree of specific performance of the cashless exercise, plus liquidated damages, and attorneys' fees, expenses, and costs;

e. On the fifth claim for relief, a decree of specific performance of the Warrant Exercise Agreement, plus attorneys' fees, expenses, and costs;

f. Granting such other and further relief as the Court deems just and proper.

Dated: March 8, 2024
New York, New York

OLSHAN FROME WOLOSKY LLP

By: */s/ Thomas J. Fleming*

Thomas J. Fleming
Daniel M. Stone
*Attorneys for Plaintiff*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300
tfleming@olshanlaw.com
dstone@olshanlaw.com