UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

SABBY VOLATILITY WARRANT MASTER
FUND LTD.,

             Plaintiff,

      - against -               **MEMORANDUM AND ORDER**
                                        24 Civ. 920 (NRB)

SAFETY SHOT, INC.,

             Defendant.

-----------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

       Plaintiff Sabby Volatility Warrant Master Fund Ltd. ("Sabby"), an investment firm, filed this breach of contract action against Defendant Safety Shot, a wellness and functional beverage company that trades publicly on the NASDAQ. See ECF No. 16 ("Second Amended Complaint" or "SAC"). Presently before the Court is plaintiff's motion, filed on September 6, 2024, see ECF No. 32, to strike the third and fifth affirmative defenses from defendant's answer (the "Unclean Hands" defense and the "Public Policy" defense, respectively; together, the "Dealer Defenses"), see ECF No. 35 ("Pl.'s Brief"). Also pending are discovery disputes related to defendant's affirmative defenses, resulting in plaintiff's pre-motion letter to quash and defendant's pre-motion letter to compel.

       For the reasons below, the Court grants plaintiff's motion to strike defendant's third and fifth affirmative defenses. We

also limit the scope of discovery to the parties' dealings in this transaction.

## PROCEDURAL HISTORY

On February 8, 2024, plaintiff filed its initial complaint alleging that defendant breached a contract entered into by the parties for the purchase of securities.  See ECF No. 1.  On March 8, 2024, plaintiff filed an amended complaint, see ECF No. 12, and, after a pre-motion conference on April 29, 2024, plaintiff filed a second amended complaint on May 1, 2024, see SAC.  Defendant filed an amended answer on June 27, 2024, see ECF No. 25 ("Am. Answer"), which contains six affirmative defenses, two of which are presently at issue.[1]

## RELEVANT FACTS[2]

**A.   Sabby's Investments in Safety Shot**

Some history of the dealings between the parties is helpful to place the current disputes in context.  In January of 2023, Sabby invested in Safety Shot, purchasing shares of common stock and two sets of warrants.  SAC ¶ 2.  These warrants entitled Sabby to 4,210,526 shares in Safety Shot upon their exercise. Id. ¶¶ 11-12.

---

[1]      For the avoidance of doubt, it should be mentioned that defendant's amended answer includes two defenses entitled "Fifth Affirmative Defense."  See Am. Answer at 10.  It is the first of these two defenses -- which alleges that defendant's contracts with plaintiff are void -- that is the subject of plaintiff's motion to strike.

[2]      Unless otherwise noted, the facts considered and recited herein are drawn from plaintiff's Second Amended Complaint.

Sabby's purchases were memorialized in several formal agreements. Id. ¶ 11. Under one such agreement, the Registration Rights Agreement ("RRA"), Safety Shot "agreed to register the shares underlying the Warrants with the SEC for resale in the public markets [and]. . . to maintain an effective registration statement until the Warrants were exercised in full." Id. ¶ 12.

Several months later, in August of 2023, Safety Shot spun-off a subsidiary company and, in connection with the spin-off, issued 2,000,000 shares in the form of a special dividend. Id. ¶ 34. This distribution triggered an anti-dilution provision in Sabby's warrant contract with the defendant, which resulted in an increase in Sabby's exercisable warrant shares by 306,728. Id. ¶ 35. Consequently, Sabby's warrants now covered more than 4.5 million exercisable warrant shares. Id. ¶¶ 12, 13, 34-36. However, according to plaintiff, Safety Shot failed, in violation of the RRA, to amend its registration statement after the spin-off to cover Sabby's additional 306,728 warrant shares (the "Unregistered Warrant Shares"). Id. ¶ 13.

During the same period, Sabby began exercising its warrants "opportunistically, based on market liquidity and price." Id. ¶ 14. By November of 2023, Sabby's remaining warrants covered approximately 2,640,727 shares. Id. At that time, Safety Shot -- in need of additional cash -- proposed that Sabby "make a

single cash exercise for all of its remaining Warrants," which would result in a nearly $2.5 million infusion into Safety Shot. Id. ¶¶ 14, 15, 18.  To compensate Sabby for "the liquidity risks that it would bear with a large position in Safety Shot common stock," Safety Shot agreed to give Sabby an additional 200,000 "inducement shares" of registered common stock.  Id. ¶¶ 14-19.

The parties memorialized this deal in a "Warrant Exercise Agreement."  Id. ¶ 18.  On November 8, 2023, Sabby wired Safety Shot the agreed-upon $2.5 million and in return, expected to receive (i) warrant shares numbering roughly 2.6 million and (ii) 200,000 additional inducement shares.  Id.  However, Safety Shot admits that it "never delivered the [200,000] Inducement Shares[.]"  Id. ¶ 19; see also Am. Answer ¶ 19.

Further, Sabby received only 2,333,999 of the 2,640,727 shares that should have been delivered upon the "exercise[] [of] all of its warrants."  SAC ¶¶ 4, 20.   This 306,728-share shortfall reflected the shares Sabby received after the August 2023 special dividend, shares which Sabby alleges Safety Shot failed to register as required under the RRA.  Id.  ¶¶ 13, 20. Consequently, these unregistered shares could not be converted into publicly tradeable warrant shares.  Id. ¶¶ 20, 21.

Sabby nevertheless sought to clear its Safety Shot holdings and asked defendant repeatedly to register the unregistered shares.  Id.  Safety Shot represented that it would do so, which

Sabby relied on in attempting to sell its remaining holdings. However, Safety Shot still could not deliver an effective registration statement covering the Unregistered Warrant Shares, as required under the RRA, which led Sabby to file suit for breach of contract on February 8, 2024. See ECF No. 1.

### B.    The Motion to Strike and Related Discovery Disputes

As noted earlier, two affirmative defenses in defendant's answer are the subject of the instant motion to strike. See ECF No. 35.

Plaintiff first seeks to strike defendant's third affirmative defense, which provides:

> The SAC is barred by the doctrine of unclean hands, including as provided by 15 U.S.C. § 78cc(b).

Am. Answer at 10.

Plaintiff also moves to strike defendant's fifth defense:

> Any governing contracts are void as against public policy, including as provided by 15 U.S.C. § 78cc(b).

Id.

The parties refer to these defenses collectively as the "Dealer Defenses." Pl.'s Brief, passim. Both defenses rely on Section 29(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and its definition of "broker/dealer." See 15 U.S.C. § 78c(a)(4)-(5). If established, the defenses allow a party to a securities contract to void the contract because the contracting counterparty transacted as a broker/dealer without

registering as such.  See id.  By asserting the Dealer Defenses, Safety Shot attempts to invalidate its contracts with Sabby by showing that plaintiff acted as an unregistered dealer in its transactions with defendant.  See ECF No. 39 at 14, 15.

In response, Sabby maintains that the Dealer Defenses are factually and legally unsupported and have been deployed merely as tools to conduct intrusive, time consuming, and expensive discovery.  See Pl.'s Brief at 10.  Indisputably, Safety Shot has subpoenaed nonparties Wedbush Securities ("Wedbush") and Pershing LLC ("Pershing"), seeking, inter alia, "all [of Sabby's] transactions in Safety Shot by any [of the nonparty's] customer[s]."  See ECF No. 48 at 2.

Defendant's discovery tactics have resulted in plaintiff's pre-motion letter to quash, see id., and defendant's pre-motion letter to compel, see ECF No. 52.  Between the motion to strike and the discovery disputes, we have reviewed three substantive memoranda of law, see ECF Nos. 35, 41, and 44, and three sets of letters, see ECF Nos. 48, 49, 52, 58, 59, 61, 62.  The Court has also written to the parties to clarify the nature of the discovery disputes and their relationship to the strike motion. See ECF No. 55.  Furthermore, the Court held oral argument on February 4, 2025.

### C.    Safety Shot's Collateral Proceedings

It bears noting that, in addition to the instant action, Safety Shot is currently a defendant in at least two similar cases involving different plaintiffs.  These cases share the main substantive allegations regarding Safety Shot's warrant agreements and involve motions to strike similar to the one at issue here.  See Alta Partners, LLC v. Safety Shot, Inc., No. 24 Civ. 373 (JMF) (S.D.N.Y.); Bigger Capital v. Safety Shot, Index No. 650148/2024 (Sup. Ct. N.Y. Co.).  In Bigger Capital, Supreme Court Justice Melissa Anne Crane recently granted a motion to strike Safety Shot's Dealer Defenses,[3] Bigger Capital, NYSCEF No. 12, holding that "[t]here is simply nothing about this transaction that required plaintiff [an investment firm] to register as a broker dealer," id. at NYSCEF No. 40.[4]

## LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court, either sua sponte or by motion, "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "In order for a court to strike a defense as insufficient: '(1)

---

[3]    Specifically, two of the affirmative defenses dismissed by Justice Crane recited that plaintiff's breach of contract claims were "barred, in whole or in part, by the doctrine of unclean hands," and sought that "the Warrant [be] declared null and void by this Court because of Plaintiff's underlying violation of Section 15(a) of the Exchange Act."  See Bigger Capital, at NYSCEF No. 7 at 7-8.

[4]    Justice Crane also observed that the "broker dealer . . . defense is likely time barred."  Id.  Since we conclude that Safety Shot's affirmative defenses fail on the merits, the Court need not opine on the statute of limitations arguments in the parties' moving papers.

there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense.'" Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010) (quoting Specialty Mins., Inc. v. Pluess-Staufer AG, 395 F. Supp. 2d 109, 111-12 (S.D.N.Y. 2005)).

The Second Circuit has emphasized that a court's analysis will "be shaped by the nature of the affirmative defense," for some defenses may rest upon facts that "may not be readily known to the defendant, a circumstance warranting a relaxed application of the plausibility standard." GEOMC Co. v. Calmare Therapeutics Inc., 918 F.3d 92, 98 (2d Cir. 2019). That said, "the plausibility standard of Twombly [still] applies to determining the sufficiency of . . . the pleading of an affirmative defense." Id. Ultimately, it is "within the District Court's discretion" to strike a defense. Id. at 99.

## DISCUSSION

Having considered the parties' extensive briefing, letters, and oral argument, it is clear that defendant has sought to use the Dealer Defenses as an impermissible hook for wide-ranging discovery of Sabby, as well as non-parties, in the hope of avoiding liability by showing that plaintiff violated securities laws in its dealings in other contexts -- not the specific

transactions between Sabby and Safety Shot -- or engaged in abusive short selling.  Safety Shot has offered no evidence that Sabby engaged in either type of wrongdoing.

Despite the discovery that has already occurred, all Safety Shot can say at this point is that it has some unspecified "good reason to believe that Sabby conspired with other hedge funds to manipulate the price of Safety Shot's securities."  See ECF No. 61 at 2 (emphasis added).  A bald claim of "good reason," absent any factual support, is simply insufficient to permit Safety Shot to engage in what appears to be a classic fishing expedition.  See Collens v. City of New York, No. 03 CIV. 4477 (JGK), 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a fishing expedition into actions or past wrongdoing not related to the alleged claims or defenses.") (internal marks omitted); see also Hughes v. LaSalle Bank, No. 02 Civ. 6384 (MBM)(HBP), 2004 WL 414828, at *1 (S.D.N.Y. Mar. 4, 2004) ("A litigant may not use discovery to determine whether there is a cause of action.") (citation omitted); Jones v. Capital Cities/ABC Inc., 168 F.R.D. 477, 480 (S.D.N.Y. 1996) ("[T]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists.").  Accordingly, the Court grants Sabby's motion to strike and rejects Safety Shot's expansive discovery efforts.

This approach alone is sufficient to grant plaintiff's motion to strike. However, the Court would reach the same conclusion even if it were to apply the traditional three-factor test that governs a motion to strike analysis. See supra at 6-7; see also Coach, Inc., 756 F. Supp. 2d at 425. This is explored below.

**Factor One -- Factual Sufficiency:** Defendant's Dealer Defenses are pled without sufficient facts to show that Sabby acted as a broker or dealer within the meaning of the Exchange Act. There is no indication that Sabby functioned as a broker by entering the warrant transactions on behalf of another or that Sabby acted as a dealer by engaging in these transactions through an intermediary broker. See 15 U.S.C. § 78c(a)(4)-(5). Instead, in a letter to the Court, defendant merely levies bald assertions that Sabby transacted as a broker/dealer and that "discovery will reveal that the disputed transactions at the heart of Sabby's [SAC] are no more . . . than vehicles for Sabby's unregistered dealer work." ECF No. 29 at 2. But "conclusory assertions, absent any supporting factual allegations are insufficient as a matter of law." Coach, Inc., 756 F. Supp. 2d at 425; see also Obabueki v. Int'l Bus. Machs. Corp., 145 F.Supp.2d 371, 401 (S.D.N.Y. 2001) (striking an unclean hands defense on the basis that "[p]leading the words

'unclean hands' without more . . . is not a sufficient statement of such defense.").[5]

**Factor Two -- Legal Sufficiency:** Defendant's Dealer Defenses are also legally deficient. For Safety Shot to show that Sabby acted as an unregistered broker/dealer, it would need to establish that "(1) the <u>contract</u> involved a <u>prohibited transaction</u>, (2) [Safety Shot] is in contractual privity with [Sabby], and (3) [Safety Shot] is in the class of persons the Act was designed to protect." <u>EMA Fin., LLC v. Vystar Corp.</u>, No. 19 Civ. 1545 (ALC) (GWG), 2021 WL 1177801, at *2 (S.D.N.Y. Mar. 29, 2021) (internal marks omitted) (emphasis added); <u>see also</u> <u>Ema Fin., LLC v. Vystar Corp.</u>, 336 F.R.D. 75, 81 (S.D.N.Y. 2020) (highlighting the well-settled principle that Section 29(b) can only "render[] void those contracts which by their terms violate the Act." (quoting <u>Slomiak v. Bear Stearns & Co.</u>, 597 F. Supp. 676, 682 (S.D.N.Y. 1984)). Here, there is no allegation that the parties' contracts are infirm in any respect,[6] nor does Safety Shot have any intention of making such an assertion, for to do so would require Safety Shot to accept

---

5    Aside from its conclusory allegations, the only other support defendant offers for its Dealer Defenses is an unrelated SEC enforcement action brought against Sabby in 2023 for engaging in naked short selling. <u>See</u> ECF No. 34-4. However, neither the action itself nor the thirty-three-page SEC complaint accompanying it supports a claim that Sabby engaged in naked short selling or acted as a broker/dealer in its specific transactions with Safety Shot.

6    It also bears noting that Sabby exercised its warrants for several months, and at no point prior to the instant lawsuit did Safety Shot indicate that such exercises were invalid or prohibited by the securities laws. <u>See</u> SAC ¶ 14; <u>see also</u> ECF No. 34-5 (Defendant's January 25, 2023, Form 8-K).

that its own contracts -- entered into voluntarily and no doubt
with the assistance of counsel -- were violative of federal
securities laws.

**Factor Three -- Prejudice:**    Prejudice has been clearly
demonstrated, as evidenced by Safety Shot's efforts to use its
affirmative defenses to obtain discovery wholly unrelated to the
transactions at issue.    For example, Safety Shot's first
requests for production sought from Sabby "All Communications
with the [SEC]," "All Communications with [FINRA]," and
"Statements of all financial accounts that transacted in Safety
Shot securities" without further limitation as to content.
Pl.'s Brief at 10.    In another instance, Safety Shot sought
financial and trading records for every position held by funds
like Sabby for the past nine years.  See ECF No. 34 ¶ 2.    In
addition, the discovery disputes here involving non-parties
Wedbush and Pershing bolster the conclusion that defendant's
affirmative defenses have resulted in intrusive, onerous, and
prejudicial discovery.

Accordingly, defendant's two dealer defenses are struck.
See GEOMC Co., 918 F.3d at 99 ("[P]rejudice may be considered
and, in some cases, may be determinative" in the motion to
strike analysis); Coach, Inc., 756 F. Supp. 2d at 429 (striking
an affirmative defense where "[p]laintiffs would needlessly
incur increased discovery costs in having to explore the factual

grounds for this defense [, and the defense would also]. . . greatly expand the scope of discovery by raising [other] issues . . . outside the scope of the current litigation.").

## CONCLUSION

For the reasons stated above, we grant plaintiff's motion to strike the Dealer Defenses.  Further, with respect to the pre-motion letters to quash and compel, we limit the scope of discovery only to information related to the parties in their bilateral dealings in this specific transaction.

Finally, the Court respectfully requests that the Clerk of Court terminate the pending motion to strike at ECF No. 32, as well as the pending discovery-related letter motions at ECF Nos. 48 and 52.


Dated:    March 17, 2025
          New York, New York


_____
          NAOMI REICE BUCHWALD
      UNITED STATES DISTRICT JUDGE