UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X

SABBY VOLATILITY WARRANT MASTER FUND LTD.,

Plaintiff,

- against -

SAFETY SHOT INC.,

Defendant.

-------------------------------------X

**MEMORANDUM AND ORDER**

24 Civ. 920 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Presently before the Court is a dispute between the parties concerning the appropriate judgment to be entered following this Court's post-trial opinion. Plaintiff Sabby Volatility Warrant Master Fund Ltd. ("Sabby") contends that it is entitled to judgment in the amount of $950,037.99, plus a per diem amount accrued since the date of its letter submission. Defendant Safety Shot Inc. ("Safety Shot") asserts that Sabby is entitled only to judgment in the amount of $684,551.72. The crux of the disagreement relates to the effect of two offers of judgment Safety Shot made to Sabby prior to trial. For the reasons stated herein, the Court enters judgment for Sabby in the amount of $966,114.29.

## FACTUAL AND PROCEDURAL BACKGROUND

The essential facts of this case may be simply stated.[1]

[1] A complete rendition of the facts is available within this Court's July 29, 2026 Opinion and Order ("Order"), ECF No. 97, 2026 WL 2185586.

Safety Shot is a publicly traded company that, at the time of the events underlying this lawsuit, specialized in health-focused beverages. Sabby is an investment fund that made a series of investments in Safety Shot. In 2023 and 2024, Safety Shot breached three contracts with Sabby.

Sabby sued, and this Court held a one-day bench trial on January 27, 2026. After Safety Shot conceded at the outset of trial that it was liable for the three breaches, the trial was limited to the issue of the correct measure of damages. We concluded that Sabby was entitled to (1) compensatory damages of $221,641.65, plus prejudgment statutory interest of 9% per annum since November 9, 2023, for Safety Shot's failure to deliver certain "Remaining Warrant Shares" ("Count III Damages"); (2) compensatory damages of $340,500.00, plus prejudgment statutory interest of 9% per annum since November 8, 2023, for Safety Shot's failure to deliver certain "Inducement Shares" ("Count II Damages"); and (3) liquidated damages of $229,666.11, plus prejudgment interest at a rate of 15% per annum since January 27, 2026, for Safety Shot's failure to register certain "Remaining Warrant Shares and 2023 Warrants" ("Count I Damages").

Our decision further directed the parties to confer and submit a proposed form of judgment consistent with our opinion. Each filed a letter setting forth their respective positions as to the appropriate damages calculations. ECF Nos. 105 ("Sabby Letter"),

106 ("Safety Shot Letter"). The letters also revealed that, in the months leading up to the bench trial, Safety Shot made two offers to Sabby: (1) a Federal Rules of Civil Procedure Rule 68 offer of judgment for $1.5 million made on June 24, 2025 (the "June Rule 68 Offer"); and (2) a New York Civil Practice Law and Rules ("CPLR") 3220 offer "to liquidate damages conditionally" for $1.5 million made on November 10, 2025 (the "November Offer"). Sabby had rejected both offers.

## DISCUSSION

In their letters to the Court on the calculation of damages, the parties agreed that, pursuant to this Court's July 29, 2026 Opinion and Order, Sabby is entitled to a principal award of $791,807.76 for Safety Shot's breaches of the three contracts at issue in this case. See ECF No. 105-1 ("Proposed Judgment") at 3–4. The parties disagreed, however, on two issues: (1) the appropriate deductions, if any, from the award for Safety Shot's costs and attorneys' fees; and (2) the amount of prejudgment interest to which Sabby is entitled. We address each issue in turn.

### I. Costs and Attorneys' Fees Deductions

As mentioned previously, Safety Shot made an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure to Sabby in June 2025. The parties agree that, because Sabby rejected Safety Shot's June Rule 68 Offer for $1.5 million and then received a

judgment less than that figure, Safety Shot is entitled to deduct $752.45 in costs from the ultimate award. Sabby Letter at 2; Proposed Judgment at 3. However, Safety Shot further contends that, as a result of the June Rule 68 Offer, it may deduct from Sabby's award its expert fees incurred after that offer (a total of $105,930.22). Proposed Judgment at 3; Safety Shot Letter at 3. Safety Shot further contends that it may deduct from the award its attorneys' fees incurred between the date of the November Offer and February 27, 2026 (the date the parties filed their post-trial briefs), for "trying the issue of damages" (a total of $143,750). Proposed Judgment at 5; Safety Shot Letter at 4. Sabby contends that Safety Shot may not deduct these fees. Sabby Letter at 2-5.

**a. Rule 68**

We turn first to the issue of expert fees. Rule 68 of the Federal Rules of Civil Procedure provides that where a timely pretrial offer to allow judgment on specified terms is not accepted, and "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68 (emphasis added). See also Marek v. Chesny, 473 U.S. 1, 5 (1985). "Costs" is "intended to refer to all costs properly awardable under the relevant substantive statute or other authority." Marek, 473 U.S. at 9. Thus, "costs" typically does not include attorneys' fees unless the relevant statute under which the case has been

brought makes such a provision.[2] See Stanczyk v. City of New York, 752 F.3d 273, 275, 284 (2d Cir. 2014) (affirming district court's award of defendants' post-offer costs excluding attorneys' fees). "Costs" also typically does not include expert fees. Gortat v. Capala Bros., Inc., 795 F.3d 292, 296 (2d Cir. 2015) ("The Supreme Court has made clear on multiple occasions that, absent explicit statutory authorization, a district court may not award reimbursement for expert fees beyond the allowances authorized by 28 U.S.C. § 1920, as limited by 28 U.S.C. § 1821.").

Safety Shot contends that it is entitled to collect its expert fees because Rule 68 "costs" include expert fees where "those fees were incurred in creating trial exhibits, including expert reports." Safety Shot Letter at 3. Safety Shot submits that "all of [its expert] Mr. De Quillacq's time between June 24 and November 10, 2025 was spent on preparing his expert report, which he completed on November 10." Id. In essence, Safety Shot argues that it is entitled to collect all the fees it paid to its expert because his report was admitted at trial.

[2] For example, attorneys' fees are available when "costs" are defined to include such fees, as is the case with 42 U.S.C. § 1988. See 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . .") (emphasis added); Marek, 473 U.S. at 9 ("Since Congress expressly included attorney's fees as 'costs' available to a plaintiff in a § 1983 suit [under § 1988], such fees are subject to the cost-shifting provision of Rule 68.").

Safety Shot's position is unavailing for two reasons. First and foremost, Safety Shot is wrong on the law. Rule 68 "costs" are "defined in the same way costs are customarily defined; the rule does not provide an independent warrant for the recovery of other costs." 12 Wright, Miller & Marcus, Fed. Prac. & Proc. § 3006 (3d ed.). Thus, any award of costs must be based on the recoverable costs set forth in 28 U.S.C. § 1920, which allows for the recovery of:

> **(1)** Fees of the clerk and marshal;
> **(2)** Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> **(3)** Fees and disbursements for printing and witnesses;
> **(4)** Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> **(5)** Docket fees under section 1923 of this title;
> **(6)** Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

As the enumerated list demonstrates, Section 1920(4) permits the recovery of "the costs of making copies of any materials where the copies are necessarily obtained for use in the case." That section has been construed to allow a party seeking costs to recover "[t]he reasonable expense of preparing maps, charts, graphs, photographs, motion pictures, photostats and kindred materials." In re Air Crash Disaster at John F. Kennedy Int'l Airport, 687 F.2d 626, 631 (2d Cir. 1982) (quoting 6 Moore's Fed.

Prac. § 54.77(6) at 1739 (2d ed.)). Parties may also recover the cost of producing certain items such as "demonstration models and exhibits." Id. Put simply, Section 1920(4) allows a party to recover the cost of preparing physical materials to be used at trial.[3] But the statute does not stretch to provide for a party's recovery of the costs of the mental effort expended by an expert in preparing his expert report just because the report is used as an exhibit. Such a situation is entirely distinct from recovering the cost of the physical production of materials. Thus, a party who makes a Rule 68 offer of judgment that is not accepted may not recover the "costs" incurred in producing an expert's report, even if that report is used at trial.[4]

Second, even if Safety Shot was correct that the costs incurred by an expert in producing an expert report that is introduced as an exhibit were recoverable, the Court would decline to deduct the requested costs on the facts of this case. This

[3] Warr v. Liberatore, 2022 WL 969528, at *3 (W.D.N.Y. Mar. 31, 2022), demonstrates an appropriate usage of Section 1920(4). There, the court found that defendants were entitled to reimbursement of $475.20 for "demonstrative" exhibits under 28 U.S.C. § 1920(4). The defendants in Warr sought recovery for printing demonstrative materials for trial. See Warr v. Liberatore, No. 13-cv-6508, ECF No. 156-6 at 1. That is entirely different than the situation we consider here, in which Safety Shot seeks to recover not the physical cost of printing an expert report to be used as a demonstrative at trial, but rather the time spent by the expert in preparing his report. See ECF No. 105-5 at 6, 8 (invoicing for items such as "[r]eview of case/documents," "[w]riting report," and "[e]mail client"). This is the type of mental effort that is not covered by Section 1920(4).

[4] Cf. Hedru v. Metro-North Commuter R.R., 433 F. Supp. 2d 358, 360 (S.D.N.Y. 2006) (declining to award costs under Rule 68 for expert's preparation of "supplemental report" and "research and analysis in preparing for trial").

case proceeded to a bench trial under the Court's direction that direct testimony be produced from the parties' experts in the form of affidavits or declarations and the submission of expert reports. See, e.g., ECF No. 75 (letter from the Court to counsel stating that "[d]irect testimony for expert witnesses will consist of their expert reports"); ECF No. 80 (Mr. de Quillacq's declaration). The direct admission of expert witness testimony and reports is a mechanism used by the Court in non-jury trials to allow the parties to more efficiently present the case. But the use of such a mechanism to streamline a non-jury trial would by no means permit a party to recover all its expert fees incurred to produce its expert's report. Moreover, an expert's report is not an exhibit in the traditional sense. In fact, an expert report is typically considered to be inadmissible hearsay at a jury trial. See Checo v. Damian Fam. Care Ctr., Inc., 2026 WL 948244, at *2 (E.D.N.Y. Apr. 8, 2026) (holding that expert reports were not admissible); Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC, 528 F. Supp. 3d 219, 231 (S.D.N.Y. 2021) (noting that "expert reports would be inadmissible hearsay at trial").

For the preceding reasons, Safety Shot is not entitled to deduct $105,930.22 in expert fees as "costs" under Rule 68.

**b. CPLR 3220**

We turn now to the issue of attorneys' fees.[5] The New York CPLR sets forth three "devices by which a defendant may offer a concession to the plaintiff in advance of trial in order to obtain some incidental allowance -- generally a cost allowance -- if the offer is declined." 7 Weinstein, Korn, & Miller, New York Civil Practice ¶ 3219 (David L. Ferstendig, ed.), at 32-429. The three devices -- CPLR 3219, 3220, 3221 -- are all designed to discourage unnecessary trials but differ somewhat in operation and effect.

First, as to operation, CPLR 3219 provides for an actual "tender" in which "the party against whom a claim has been asserted must deposit the money offered with the clerk of court." Weinstein, supra, at 32-433. CPLR 3220 "applies when a defendant disputes liability but not the amount of damages." Id. at 32-434. Under that rule, "[t]he offer is conditional: if [the offeror] fails in his liability defense then damages shall be assessed at the specified sum without a trial on that issue." Id. CPLR 3221 is an offer of judgment akin to the Federal Civil Rule 68 offer of judgment. See Venture Grp. Enters., Inc. v. Vonage Bus. Inc., 750

[5] We note the threshold issue of the applicability of certain of the New York CPLR in a federal diversity action. See Venture Grp. Enters., Inc. v. Vonage Bus. Inc., 750 F. Supp. 3d 260, 275-79 (S.D.N.Y. 2024) (considering whether CPLR 3220 applies in a diversity action or if it conflicts with and is preempted by Rule 68). The parties have not submitted any briefing on the issue. However, because we ultimately conclude that the CPLR does not apply on the facts of this case, we assume for the sake of argument its applicability and do not undertake an Erie analysis.

F. Supp. 3d 260, 277 (S.D.N.Y. 2024) (noting that New York's "counterpart to Rule 68" is "CPLR 3221").

Next, as to effect, all three devices come into play only when a claimant rejects an offer and then receives a judgment less favorable than that offer. Under CPLR 3219, such a claimant must pay the offeror's "costs" from the time of the tender. Weinstein, supra, at 32-434. The claimant is also deprived of interest from that same time. Id. CPLR 3221 provides that the claimant also must pay the offeror's "costs," although he is not deprived of interest. Id. CPLR 3220 is different. It provides that the claimant must pay the offeror's "expenses" incurred "for trying the issue of damages from the time of the offer." Those expenses may include attorneys' fees. See Saul v. Cahan, 153 A.D.3d 951, 953 (2d Dep't 2017).

Safety Shot contends that, because it purportedly made an offer under CPLR 3220 in November 2025, this Court should deduct from Sabby's award $143,750 in attorneys' fees "incurred in trying the issue of damages between" the date of its November Offer and the date the parties filed their post-trial briefs. Proposed Judgment at 5. Sabby primarily argues that the November Offer is not in fact a CPLR 3220 offer at all.

Sabby's argument is persuasive. The November Offer reads as follows:

> **OFFER TO LIQUIDATE DAMAGES CONDITIONALLY**
>
> Pursuant to New York Civil Practice Law and Rules § 3220, Defendant "Safety Shot," Inc. hereby offers to allow judgment to be taken against it, in the amount of $1,500,000.00, in full resolution of any and all claims asserted by Plaintiff "Sabby" Volatility Warrant Master Fund Ltd. in the above-captioned litigation, including for substantive remedies, attorneys' fees and costs accrued, pre- and post-judgment interest, and any other rights or remedies that Sabby has asserted or could assert, or which have arisen out of or could arise out of, Sabby's allegations in the above-captioned action. This offer of judgment is made for settlement purposes only and is subject to Federal Rule of Evidence 408 and New York Civil Practice Law and Rules 4547.
>
> To accept this offer, Sabby must serve written notice of acceptance within 10 days of the date this offer is made, i.e., November 20, 2025. If Sabby does not accept this offer, it may become obligated to pay all expenses necessarily incurred by Safety Shot for trying the issue of damages from the time of this offer.

ECF No. 105-3 at 2–3. As its text makes clear, despite its title the November Offer is not an offer to liquidate damages conditionally under CPLR 3220. There is no indication that, should Sabby have accepted Safety Shot's offer, the case would have continued forward on liability alone, with damages stipulated.[6]

---

[6] The CPLR 3220 offer considered by the court in Venture Group Enterprises provides a helpful contrast. There, the offer stated:

> Pursuant to N.Y. Civil Practice Law & Rules Section 3220, defendant and counterclaim plaintiff Vonage Business Inc. ("Vonage"), **without admitting liability**, offers to allow judgment to be taken against it for $250,000, which includes costs to date, **if Vonage fails in its defense of plaintiff's claims**. If plaintiff does not accept this offer within ten days and plaintiff fails to obtain a sum

Indeed, the text of the November Offer -- that Safety Shot "hereby offers to allow judgment to be taken against it, in the amount of $1,500,000.00, in full resolution of any and all claims asserted by" Sabby, ECF No. 105-3 at 2 -- indicates that the case would have concluded upon Sabby's acceptance. Moreover, other than a few changes -- to the title of the motion ("Offer to Liquidate Damages Conditionally"), the introductory sentence ("Pursuant to New York Civil Practice Law and Rules § 3220"), and the conclusion ("for trying the issue of damages") -- the language of the November Offer is substantially similar to the June Rule 68 Offer. See ECF No. 105-4 at 2–3 (Redline of the Offers). If the November Offer is an offer under the New York CPLR at all, it is under CPLR 3221, not CPLR 3220. That is significant because CPLR 3221 does not provide for the award of attorneys' fees. Rather, it provides only for the shifting of "costs," which Safety Shot is already recovering under Rule 68. Thus, because the November Offer is not a CPLR 3220 offer, Safety Shot is not entitled to deduct its attorneys' fees incurred from the date of the November Offer.[7]

> greater than $250,000, plaintiff shall pay Vonage's expenses necessarily incurred, including attorneys' fees, from the date of this offer.

Venture Grp. Enters., Inc. v. Vonage Bus. Inc., No. 20-cv-4095, ECF No. 264-1 at 2 (emphases added).

[7] Because the Court concludes that the November Offer is not a valid CPLR 3220 offer, it need not consider the remainder of Sabby's arguments relating to that offer. See Sabby Letter at 5-6. The Court also need not consider whether the November Offer is a valid CPLR 3221 offer because Safety

**II. Prejudgment Interest**

As noted above, the parties agree that Sabby is entitled to a principal award of $791,807.76 based on Safety Shot's three breaches. Proposed Judgment at 3–4. They further agree that the per diem prejudgment interest rates for Counts III, II, and I are $54.65, $83.96, and $94.38, respectively. Sabby Letter at 2. The parties disagree, however, on the amount of prejudgment interest that has accrued. Sabby asserts it is entitled to $158,749.69 in prejudgment interest, plus a per diem amount reflecting the time that has passed since the parties made their submissions on August 7. Proposed Judgment at 5. Safety Shot contends that prejudgment interest stopped accruing when Safety Shot made its June Rule 68 Offer and therefore Sabby is entitled only to $14,352.81 in prejudgment interest. Id.; Safety Shot Letter at 2–3.

We hold that prejudgment interest did not stop accruing upon Safety Shot's June Rule 68 Offer. None of the cases Safety Shot cites in support of its position are persuasive. In the most

Shot was already entitled to deduct "costs" since the time of the earlier June Rule 68 Offer. Further, because we do not apply CPLR 3221 here, we need not consider whether Rule 68 preempts its New York counterpart. See Venture Grp. Enters., 750 F. Supp. 3d at 276–77 (collecting conflicting cases discussing the preemptive effect of Rule 68 on state offer of judgment statutes); cf. LoanStreet, Inc. v. Troia, 2023 WL 5836237, at *6 (S.D.N.Y. Sept. 8, 2023) (observing that, under Erie, "when a Federal Rule of Civil Procedure answers the same question as a state law, 'the Federal Rule governs in federal court, unless the rule at issue violates the Rules Enabling Act'") (citing La Liberte v. Reid, 966 F.3d 79, 87 (2d Cir. 2020)).

persuasive case, Quintel Corp., N.V. v. Citibank, N.A., the court held that an offer of judgment prior to trial was "sufficient to stop the running of interest." 606 F. Supp. 898, 915 (S.D.N.Y. 1985). Critically, in reaching that conclusion, the court looked to New York CPLR 3219's statement that a claimant "shall not recover interest or costs from the time of the offer." Id. at 914-15. But as explained above, CPLR 3219 is a tender offer (a device distinct from an offer of judgment),[8] and New York's equivalent offer of judgment, CPLR 3221, does not stop the accrual of prejudgment interest.[9]

**CONCLUSION**

The Clerk of Court is respectfully directed to enter judgment for Sabby in the amount of $966,114.29. The above amount reflects the sum of the total judgment inclusive of pre-judgment interest through August 7, 2026 ($950,557.44) and the per diem rates from August 8, 2026, through October 16, 2026 for the Count III Damages

[8] See Weinstein, supra, at 32-434 (noting that interest only stops accruing under CPLR 3219 because "the money was actually made available to the claimant").

[9] Safety Shot's remaining cases are also unavailing. Hydros Bottle LLC v. Stephen Gould Corp. recognizes that state law governs the availability of prejudgment interest in federal diversity actions and applies California law to the case. 2017 WL 3476997, at *2-3 (N.D. Cal. Aug. 10, 2017). Kessler v. Superior Care, Inc. is governed by Illinois law, and the opinion does not contain an explanation of why prejudgment interest stopped accruing. 127 F.R.D. 513, 517 (N.D. Ill. 1989). Finally, in Blasini-Stern v. Beech-Nut Life Savers Corp., the deposit at issue was not an offer of judgment. 429 F. Supp. 533, 535 (D.P.R. 1975).

($3,825.50), Count II Damages ($5,877.20), and Count I Damages ($6,606.60), as well as the deduction of $752.45 in Veritext costs.

Dated: New York, New York
October 16, 2026

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE